ALEX G. TSE (CABN 152348)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

GREGG W. LOWDER (CABN 107864)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7044
    FAX: (415) 436-7234
    Gregg.Lowder@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> One 1980 CESSNA AIRCRAFT, MODEL P210, FAA #N212SB, <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR CIVIL FORFEITURE** |

**NATURE OF THE ACTION**

1. This is a judicial in rem forfeiture action authorized by Title 21, United States Code, Section 881(a), Title 18, United States Code, Sections 981 and 983, and Title 28, United States Code, Section 2461.

2. This Court has jurisdiction under Title 28, United States Code, Sections §§ 1345, 1355(a), Title 21, United States Code, Section 881, and Title 18, United States Code, Section 981.

3. This action is timely filed in accordance with 18 United States Code, Section 983(a)(3)(A).

4. Venue is proper pursuant to United States Code, Sections 1355(b) and 1395 because the defendant was seized in the Northern District of California and remains in this district.

COMPLAINT FOR CIVIL FORFEITURE      1
US v One 1980 Cessna Aircraft, Model P210, #N212SB

## PARTIES

5. Plaintiff is the United States of America.

6. The defendant is the asset listed below:

- One 1980 Cessna P210 fixed-wing aircraft, serial number P21000489, Federal Aviation Administration registration number N212SB, seized on or about July 20, 2017, in Santa Rosa, California, by the Drug Enforcement Administration (Asset ID number 17-DEA-632418), and all documents seized or associated with the ownership and maintenance of the aircraft and compliance with federal regulations, including maintenance logs, log books, records of maintenance, airworthiness certificates, registration and ownership records, operating handbooks, documents relating to the aircraft's modifications, weight and balance, and records of compliance with airworthiness directives and requirements ("the defendant Cessna aircraft").

## FACTS

7. In July 2017, Australian residents Jim Soukoulis, also known as Dimitrakis Soukoulis, then 52 years old (hereafter "Soukoulis"), Peter Romeo Caluzzi, then 58 years old (hereafter "Caluzzi"), and Hugh John Gorman, then 72 years old (hereafter "Gorman"), were arrested in Australia by the Australian Federal Police (hereafter "AFP") after an investigation that included surveillance and wiretaps of encrypted communications devices as authorized under Australian law. The three were charged with a criminal conspiracy to import methamphetamine into Australia from the United States and with criminal money laundering.

8. The specific criminal charges filed in Melbourne Magistrate's Court on or about July 19, 2017 against them are as follows:

   a. Between January 1, 2017, and July 19, 2017, at Melbourne in the state of Victoria and elsewhere, they conspired with others to import a substance, the substance being a border controlled drug, namely methamphetamine, and the quantity imported being a commercial quantity, contrary to section 307.1(1) of the Australian Criminal Code 1995 (Cth) by virtue of 11.5(1) of the Criminal Code

1995(Cth); and

b. Between March 28, 2017, and May 2, 2017, at Melbourne in the state of Victoria and elsewhere, they dealt with money that was intended to become an instrument of crime, being a Commonwealth indictable offence, and at the time of the dealing the value of the money was $100,000 or more contrary to section 400.4(1) of the Australian Criminal Code 1995 (Cth).

9. Charges against the three individuals named above remain pending in Australian criminal court.

10. The AFP's investigation revealed the following: the three conspirators conspired and planned for Gorman, a pilot, to identify a suitable light aircraft for sale in the United States, to purchase the aircraft and modify it sufficiently to enable it with the capability to fly from the United States to Australia, to obtain a quantity of methamphetamine in the United States, to conceal the methamphetamine in the aircraft, and to fly the aircraft from the United States to Australia.

11. Caluzzi's role in the criminal operation included, among other things, planning the operation to export methamphetamine from the United States via a light aircraft and importing that methamphetamine into Australia via the same light aircraft, arranging financing for Gorman to purchase the defendant Cessna aircraft for that purpose, arranging funding for Gorman's travel expenses, communicating with Gorman throughout the conspiracy, liaising between the co-conspirators, and managing Gorman's conduct in order to carry out the object of the conspiracy.

12. Soukoulis's role in the criminal operation included, among other things, planning the operation to export methamphetamine from the United States via a light aircraft and importing that methamphetamine into Australia via the same light aircraft, communicating with and overseeing both Caluzzi and Gorman in their carrying out of the criminal operation, arranging financing to purchase the methamphetamine, arraigning financing for Gorman to purchase the light Cessna aircraft, and organizing the receipt of the methamphetamine once imported into the United States.

13. In 2002, Soukoulis was convicted of importing cocaine into Australia and for that crime was sentenced to 12 years in prison.

14. Between January and July 2017, Gorman, Caluzzi, and Soukoulis met on multiple

1  occasions in Australia and communicated electronically on numerous occasions. The AFP surveilled meetings and listened to electronic communications.

15. Gorman owns the Australian company HJ & JM Gorman V Pty Ltd. At the time the defendant Cessna aircraft was purchased, Gorman was and had been the sole director of his company and solely in control of it.

16. In early March 2017, Gorman opened a bank account at Westpac Bank in Melton, Victoria, Australia, in the name of HJ & JM Gorman V Pty Ltd. Upon opening the account, Gorman identified himself as the sole signatory to the account.

17. Gorman was a registered pilot in Australia and authorized to fly single-engine and multi-engine aircraft. In early March 2017, Gorman obtained a Class 2 Medical Certificate that was valid until January 8, 2018. A Class 2 medical certificate is required to hold a private pilot's license in Australia.

18. On multiple occasions from January through June 2017, Gorman traveled to the United States as a passenger on commercial aircraft. He repeatedly met with the owner of PropJet Aviation LLC, which is a broker of aircraft and located at the Charles M. Schultz Sonoma County Airport, 2282 Becker Boulevard, Santa Rosa, California, so that Gorman could purchase the defendant Cessna aircraft.

19. On March 20, 2017, Gorman, as Director for HJ & JM Gorman V Pty Ltd, 247 Hampshire RD, Sunshine, Victoria, Australia, signed a purchase agreement to buy the defendant Cessna aircraft. The price was $620,000 USD. The selling agent was PropJet Aviation, LLC. The agreement reflects a $20,000 deposit was made directly to the selling agent PropJet Aviation LLC, with the balance to fund the escrow of $600,000.

20. All payments made to pay the purchase price of the defendant Cessna aircraft came from the account in the name of HJ & JM Gorman V Pty Ltd at Westpac Bank, Melton, Victoria, Australia.

21. All payments from the HJ & JM Gorman V Pty Ltd at Westpac Bank originated in Australia and were transferred to financial institutions in the United States, specifically to the Oklahoma escrow company named AIC Title Service, LLC and to a United States bank account in the name of PropJet Aviation, LLC.

22. The funds transferred from the HJ & JM Gorman V Pty Ltd bank account in Australia to the United States included a $20,000 USD electronic transfer from the Australian bank to PropJet

1 | Aviation, LLC, in California and multiple payments transferred from the Australian bank to AIC Title
2 | Service, LLC, in California totaling $600,000 USD.

23. All the payments were made through TorFX, a foreign money exchange based in the United Kingdom specializing in international money transfers during transactions.

24. On or about May 11, 2017, escrow closed on the defendant Cessna aircraft. Title was transferred to and vested in Gorman as an individual, held in trust for Gorman as an individual by TPVX Aircraft Solutions, Inc., a trustee that holds title for foreign owners of aircraft seeking FAA registration.

25. No lien or encumbrance of any kind exists on the title of the defendant Cessna aircraft.

26. Modifications began on the defendant Cessna aircraft to prepare it for trans-Pacific journey. Among other modifications, a large Turtle-Pac fuel bladder began to be installed.

27. While he was in California, Gorman engaged in at least three different hand-to-hand street drug transactions in which he acquired a large quantity of methamphetamine. Gorman also leased a self-storage unit in Windsor, California, and maintained it continuously until his arrest.

28. On June 14, 2017, agents of the U.S. Drug Enforcement Administration (DEA) executed a federal search warrant on the self-storage unit leased to Gorman in Windsor, CA. The search warrant was executed while Gorman was in Australia. In the storage unit, agents found 10 suitcases and one box containing packages of white crystalline substance weighing in gross approximately 255 kilograms. The white crystalline substance was subsequently tested.

29. Once tested, the net weight of the white crystalline substance by itself was at or above 224,933 grams and was 80% pure methamphetamine.

30. On July 6, 2017, Gorman was arrested by the AFP boarding a commercial flight in Australia to return to the United States. He was immediately advised of his rights. Gorman did not request a lawyer and agreed to talk to law enforcement.

31. During his interview, Gorman stated that he retrieved illegal drugs on three separate dates while he was in the United States and stored those drugs in suitcases in his Windsor storage unit. He identified the suitcases in a photograph taken of the suitcases seized from his storage unit as being the suitcases he retrieved.

32. Gorman explained that the defendant Cessna aircraft was purchased specifically to

transport those drugs via the defendant Cessna aircraft out of the United States and into Australia.

33. Gorman stated that modifications were underway on the defendant Cessna aircraft to enable it to make the long journey over the ocean, including modifying the defendant Cessna aircraft to install a large fuel bladder.

34. Gorman identified Soukoulis and Caluzzi as planners of the criminal operation in which he was partaking and as individuals who acted in furtherance of carrying out that criminal plan.

35. Gorman explained that he expected a large payment of money for smuggling the drugs out of the United States and into Australia.

36. The defendant Cessna aircraft has been seized for forfeiture by the United States, pursuant to a federal seizure warrant authorized by a United State Magistrate Judge.

37. Caluzzi is guilty of the charge against him in Australia of conspiring with others to import the border controlled drug methamphetamine in a commercial quantity, contrary to section 307.1(1) of the Australian Criminal Code 1995 (Cth) by virtue of 11.5(1) of the Criminal Code 1995 (Cth).

38. Caluzzi is guilty of the charge against him in Australia of dealing with money that was intended to become an instrument of a Commonwealth indictable offence in a value of $100,000 or more, contrary to section 400.4(1) of the Australian Criminal Code 1995 (Cth).

39. Soukoulis is guilty of the charge against him in Australia of conspiring with others to import the border controlled drug methamphetamine in a commercial quantity, contrary to section 307.1(1) of the Australian Criminal Code 1995 (Cth) by virtue of 11.5(1) of the Criminal Code 1995 (Cth).

40. Soukoulis is guilty of the charge against him in Australia of dealing with money that was intended to become an instrument of a Commonwealth indictable offence in a value of $100,000 or more, contrary to section 400.4(1) of the Australian Criminal Code 1995 (Cth).

41. Gorman is guilty of the charge against him in Australia of conspiring with others to import the border controlled drug methamphetamine in a commercial quantity, contrary to section 307.1(1) of the Australian Criminal Code 1995 (Cth) by virtue of 11.5(1) of the Criminal Code 1995 (Cth).

42. Gorman is guilty of the charge against him in Australia of dealing with money that was intended to become an instrument of a Commonwealth indictable offence in a value of $100,000 or more, contrary to section 400.4(1) of the Australian Criminal Code 1995 (Cth).

## VIOLATIONS

43. The United States incorporates paragraphs one through 42 as though fully set forth.

44. Section 846 of Title 21 of the United States Code prohibits a person from attempting, conspiring, or agreeing to distribute, or to possess with the intent to distribute, a controlled substance, including methamphetamine.

45. Section 841 of Title 21 of the United States Code prohibits the distribution, dispensing, manufacture, or the possession with the intent to distribute, manufacture, or dispense, a controlled substance, including methamphetamine.

46. Sections 953 and 963 of Title 21 of the United States Code, prohibit the attempt or conspiracy to export from the United States certain narcotic drugs, including methamphetamine.

47. Criminal penalties for violations of the above criminal sections for the quantity of methamphetamine identified in this complaint include, among other penalties, imprisonment for a period of not less than 10 years nor more than life, as per sections 841(b)(1)(A) and 960(b)(1)(A) of Title 21 of the United States Code.

48. Section 881 of Title 21 of the United States Code provides for the civil forfeiture of Title 21 controlled substance offenses. Section 881(a)(4) of Title 21 of the United States Code provides for the civil forfeiture of all conveyances, including aircraft, which are used or intended to be used, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of controlled substances distributed, dispensed, or acquired in violation of Subchapter 1, Chapter 13 of Title 21 United States Code, which includes methamphetamine.

49. Section 881(a)(6) of Title 21 of the United States Code provides for the forfeiture of all money furnished, or intended to be furnished, by any person in exchange for a controlled substance or listed chemical in violation of Subchapter 1, Chapter 13 of Title 21 United States Code, all proceeds traceable to such an exchange, and all money used or intended to be used to facilitate any violation of Subchapter I, Chapter 13 of Title 21 United States Code.

50. Section 1956(a)(2) of Title 18 of the United States Code states that any person who attempts to or does transport, transmit, or transfer funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity (which includes methamphetamine exportation and distribution) is punishable for a term of not more than 20 years imprisonment and a fine of twice the amount of the finds involved or $500,000, whichever is greater.

51. Section 1956(h) of Title 18 of the United States Code states that any person who conspires to commit any violations of sections 1956 or 1957 shall be subject to the same penalties as any other violation of those sections.

52. Section 981(a)(1) of Title 18 of the United States Code provides for the forfeiture of any property, real or personal, involved in a transaction, or attempted transaction, in violation of Section 1956 or 1957, or any property traceable to such property, and any property that constitutes or is derived from proceeds traceable to such violation.

53. In light of the foregoing, the defendant Cessna aircraft listed herein is subject to judicial forfeiture.

*****

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of the defendant Cessna aircraft; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that the Court enter a judgment forfeiting the defendant Cessna aircraft; and that the United States be awarded such other relief as may be proper and just.

DATED: October 23, 2018

Respectfully submitted,

ALEX G. TSE
United States Attorney

GREGG W. LOWDER
Assistant United States Attorney

## VERIFICATION

I, Ryan Sibbald, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration. I am a case agent assigned to this case. As such, I am familiar with the facts and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained in it to be true.

* * * * *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of October, 2018, in San Francisco, California.

RYAN S. SIBBALD
Special Agent
Drug Enforcement Administration

JS-CAND 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
One 1980 CESSNA AIRCRAFT, MODEL P210, FAA #N212SB

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question *(U.S. Government Not a Party)*
[ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent–Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury -Medical Malpractice | **PRISONER PETITIONS** | **IMMIGRATION** | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **HABEAS CORPUS** | 462 Naturalization Application | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | 463 Alien Detainee | 465 Other Immigration Actions | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | **OTHER** | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation–Transfer
[ ] 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 21, United States Code, Section 881(a)
Brief description of cause:
Drug related forfeiture action

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*

[X] SAN FRANCISCO/OAKLAND  [ ] SAN JOSE  [ ] EUREKA-MCKINLEYVILLE

DATE 10/23/2018

SIGNATURE OF ATTORNEY OF RECORD