UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ONE 1980 CESSNA AIRCRAFT, MODEL P210, FAA #N212SB,<br><br>Defendant. | Case No. 18-cv-06474-DMR<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 25 |

This action arises from an alleged conspiracy to launder money and import methamphetamine into Australia using a light aircraft. Plaintiff United States filed this *in rem* civil forfeiture action against the aircraft at issue, Defendant One 1980 Cessna Aircraft, Model P210, FAA #N212SB (the "Aircraft"). Default was entered against the Aircraft and the government now moves for default judgment. [Docket No. 25.] The court determines that this matter is appropriate for resolution without a hearing. Civ. L.R. 7-1(b). For the reasons stated below, the court grants the government's motion for default judgment.

## I. BACKGROUND

### A. Factual Allegations

In July 2017, the Australian Federal Police ("AFP") arrested Australian residents Hugh John Gorman, Peter Romeo Caluzzi, and Jim Soukoulis aka Dimitrakis Soukoulis and charged them with a criminal conspiracy to import methamphetamine into Australia from the United States and with criminal money laundering. Compl. ¶¶ 7, 8. The charges against the three individuals remain pending in Australia. *Id.* at ¶ 9.

The complaint makes the following allegations regarding the results of the AFP's investigation into the conspiracy: the three conspirators planned that Gorman, a pilot, would

purchase a suitable light aircraft in the United States and modify the aircraft to enable it to fly from the United States to Australia. They planned to obtain methamphetamine in the United States, conceal it in the aircraft, and fly it from the United States to Australia. *Id*. at ¶ 10. Caluzzi's role included planning the criminal operation, arranging financing for Gorman to purchase the aircraft, funding Gorman's travel expenses, communicating with the other co-conspirators, and managing Gorman's conduct to carry out the conspiracy. *Id*. at ¶ 11. Soukoulis's role included planning the criminal operation, arranging financing to purchase the aircraft and methamphetamine, and arranging the receipt of the methamphetamine. *Id*. at ¶ 12. Soukoulis had been previously convicted of importing cocaine into Australia and served 12 years in prison. *Id*. at ¶ 13.

In 2017, Gorman travelled to the United States on several occasions to meet with the owner of PropJet Aviation, LLC, an aircraft broker in Santa Rosa, California. *Id.* at ¶ 18. On March 20, 2017, Gorman used his Australian company HJ & JM V Pty Ltd to purchase the defendant Aircraft for $620,000. *Id*. at ¶¶ 15, 19. Gorman owns and controls the company as its sole director. *Id*. at ¶ 15. In early March 2017, Gorman had opened a bank account in Australia in the company's name, for which he was the sole signatory. All payments towards the purchase price of the Aircraft originated from that bank account and were transferred to United States financial institutions using a UK foreign currency exchange for the benefit of PropJet Aviation, LLC and an escrow company named AIC Title Service, LLC. *Id*. at ¶¶ 16, 20-22.

Escrow closed on the Aircraft in May 2017, and title vested in Gorman as an individual, held in trust for Gorman by TPVX Aircraft Solutions, Inc., a trustee that holds title for foreign owners of aircraft seeking FAA registration. *Id*. at ¶ 24. No lien exists on the title. *Id*. at ¶ 25. Modifications began to prepare the Aircraft for the trans-Pacific journey, including installing a large fuel bladder. *Id*. at ¶ 26.

While he was in California, Gorman obtained a large quantity of methamphetamine in several street drug transactions. He also leased a storage unit in Windsor, California. *Id*. at ¶ 27. In June 2017, while Gorman was in Australia, Drug Enforcement Administration ("DEA") agents executed a federal search warrant on the Windsor storage unit and found approximately 255

kilograms of a white crystalline substance that was later found to be 80% pure methamphetamine. *Id*. at ¶¶ 28, 29.

The AFP arrested Gorman on July 6, 2017 as he was boarding a commercial flight in Australia to return to the United States. After being advised of his rights, Gorman agreed to speak to law enforcement. Gorman admitted that he obtained illegal drugs on three dates while he was in the United States and stored the drugs in suitcases in his Windsor storage unit. *Id*. at ¶¶ 30, 31. He explained that the Aircraft "was purchased specifically to transport those drugs" from the United States to Australia, and that the Aircraft was being modified to enable it to make the long journey to Australia, including installing a large fuel bladder. *Id*. at ¶¶ 32, 33. Gorman identified Soukoulis and Caluzzi as the planners of the criminal operation, and explained that he expected a large payment of money for smuggling the drugs out of the United States and into Australia. *Id*. at ¶¶ 34, 35.

Gorman, Soukoulis, and Caluzzi are currently charged in Australia with conspiring to import methamphetamine in a commercial quantity and money laundering. *Id*. at ¶¶ 37-42. The government seized the Aircraft pursuant to a federal seizure warrant. *Id*. at ¶ 36.

### B. Procedural History

On October 23, 2018, the government filed a verified complaint to obtain the forfeiture of the Aircraft pursuant to 21 U.S.C. § 881(a)(4) as a "conveyance[], including [an] aircraft," which was intended for use to transport controlled substances, and 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, a money laundering statute. Compl. ¶¶ 48-52. On October 25, 2018, the Clerk issued an arrest warrant *in rem*. [Docket No. 7 (Arrest Warrant).]

In November 2018, Australian Federal Police officers personally served Caluzzi, Gorman, and Soukoulis with the complaint, notice of the forfeiture action including information about filing deadlines, arrest warrant, and other related documents. They also served each individual's Australian criminal attorney with the same documents. [Docket Nos. 12-17.] Starting on October 26, 2018, the government posted notice of the forfeiture on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days. [Docket No. 18 (Proof of Publication of

Notice).]

Having received no claim to the Aircraft or answer to the verified complaint, the government moved for entry of default.[1] [Docket No. 19.] The Clerk entered default on January 22, 2019. [Docket No. 21.] The government filed the present motion for default judgment on February 11, 2019.

## II. MAGISTRATE JUDGE JURISDICTION

As an initial matter, the court must address whether it has jurisdiction to enter judgment. Under 28 U.S.C. § 636(c)(1), a magistrate judge may enter judgment in a civil action "[u]pon the consent of the parties." The term "parties" under 28 U.S.C. § 636(c)(1) includes "all plaintiffs and defendants named in the complaint—irrespective of whether the complaint has been properly served." *Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017).

In *in rem* actions such as this, the action is against the property itself. Only those who file a claim to the property are parties to the actions, and accordingly must consent to magistrate judge jurisdiction. *See United States v. Real Prop.*, 135 F.3d 1312, 1317 (9th Cir. 1998) ("[A]bsent the filing of a claim to a property subject to forfeiture, a putative claimant is not a party to the action;" it is therefore unnecessary to obtain the consent of the putative claimant to the jurisdiction of a magistrate judge prior to the entry of a default judgment against the claimant's interest in the property) (citation and internal quotation marks omitted). These principles remain undisturbed after *Williams*. *See Williams*, 875 F.3d at 504 (recognizing the principles in *Real Property* as applicable to *in rem* actions, and explaining that the "same principle[s]" did not apply to the case before it because, among other reasons, it was not *in rem*); *Keefe Kaplan Mar., Inc. v. Vessel "Cygnet,"* No. 4:17-CV-03899-KAW, 2018 WL 534300, at *2 (N.D. Cal. Jan. 24, 2018) (explaining that the Ninth Circuit "affirmed [the] narrow exception" for magistrate jurisdiction

---

[1] It appears that the DEA conducted an administrative forfeiture proceeding before the government filed the complaint in this action. [*See* Docket No. 19-1 (Lowder Decl., Jan. 17, 2019) ¶ 3.] In connection with its request for entry of default by the Clerk, the government's attorney states that in the earlier proceeding, Caluzzi, who was represented by an attorney in San Diego, California, filed a claim form for the Aircraft. One day after the government filed the complaint in this action, it served the complaint and related notices on Caluzzi's attorney in San Diego. *Id*. at ¶¶ 3, 4. On October 30, 2018, the attorney notified the government that he no longer represented Caluzzi. *Id*. at ¶ 5. Caluzzi did not appear or file a claim in this action.

4

consent described in *Real Property* for *in rem* forfeiture proceedings).

Applying these principles, this action is *in rem* against the Aircraft. Notice was provided to the potential claimants – Soukoulis, Caluzzi, and Gorman – as well as their attorneys in Australia in November 2018. [*See* Docket Nos. 13-17.] No one has filed a claim to the Aircraft. The only party in this action is the government, which has consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). [Docket 10.] Therefore, this court has jurisdiction to enter default judgment. *See, e.g., Keefe Kaplan Mar., Inc.*, 2018 WL 534300, at *2 (finding magistrate jurisdiction to enter default judgment against a vessel in *in rem* forfeiture action upon the consent of the plaintiff, which was the only party to the action).

## III. CIVIL FORFEITURE

The government brings this action under two statutes. Compl. ¶ 1. The first statute, 21 U.S.C. § 881, provides for the forfeiture of "[a]ll conveyances, including aircraft, . . . which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of "controlled substances acquired in violation of this subchapter." 21 U.S.C. § 881(a)(1), (4). The government contends forfeiture under this statute is appropriate because the Aircraft was purchased and modified with the intent to use it to transport and export methamphetamine in violation of 21 U.S.C. §§ 841, 846, 953, and 963.

The government also brings this action under 18 U.S.C. § 981, which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 . . . ." 18 U.S.C. § 981(a)(1)(A). Section 1956, the money laundering statute, prohibits the transmission of funds "to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity," 18 U.S.C. § 1956(a)(2)(A), defined to include distribution of controlled substances, *id.* § 1956(c)(7)(B)(i), and money laundering, *id.* at §§ 1956(c)(7)(A), 1961(1). Section 1956 also prohibits conspiracy to violate any part of Section 1956. *Id.* § 1956(h).

"Forfeiture is a harsh and oppressive procedure which is not favored by the courts." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994) (quotation omitted). The Ninth Circuit has stated that it is "particularly wary of civil forfeiture statutes, for

5

they impose 'quasi-criminal' penalties without affording property owners all of the procedural protections afforded criminal defendants." *Id*. at 1068. "[F]orfeitures should be enforced only when within both letter and spirit of the law," *United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (quotation omitted), and "forfeiture statutes are strictly construed against the government." *$191,910.00 in U.S. Currency*, 16 F.3d at 1068 (citation omitted). Accordingly, "strict adherence to procedural rules is paramount in civil forfeiture proceedings." *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 01:09-CV-2319-LRH-RJJ, 2010 WL 2695637, at *1 (D. Nev. July 2, 2010) (citing *Marolf*, 173 F.3d at 1217 (denying forfeiture where government failed to provide due notice to property owner)).

Property subject to civil forfeiture may be forfeited under the Federal Rules of Civil Procedure Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Fed R. Civ. P. Supp.") and this District's Admiralty & Maritime Local Rules. *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998); Admir. L.R. 1-2. Under Admiralty & Maritime Local Rule 6-1(a), "[a] party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property has been given . . . [t]hrough execution of process in accordance with [Fed. R. Civ. P. Supp.] G(3); and [i]n accordance with [Fed. R. Civ. P. Supp.] G(4)." Admir. L.R. 6-1(a)(1).

The court must examine whether the government has strictly complied with the procedural rules governing civil forfeiture proceedings with respect to the Aircraft.

**A. Fed. R. Civ. P. Supp. G(2): Adequacy of the Complaint**

Rule G(2) sets forth the following requirements for a complaint in "a forfeiture action *in rem* arising from a federal statute," as follows:

> [t]he complaint must:
>
> (a) be verified;
>
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>
> (c) describe the property with reasonable particularity;
>
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

6

(e) identify the statute under which the forfeiture action is brought; and

(f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. G(2).

The government has satisfied the requirements of Rule G(2). The government's complaint was verified by DEA Special Agent Ryan S. Shibbald. Compl. at 9 (Verification). It states the grounds for *in rem* subject matter jurisdiction and venue under 28 U.S.C. §§ 1345, 1355(a), 1355(b), and 1395. Compl. ¶¶ 2, 4. The complaint also describes the property with particularity as a "1980 Cessna P210 fixed-wing aircraft, serial number P21000489, Federal Aviation Administration registration number N212SB" and states that the seizure occurred in Santa Rosa, California. *Id.* at ¶ 6. Further, the complaint identifies the statutes under which the forfeiture action is being brought, 21 U.S.C. § 881(a)(4) and 18 U.S.C. § 981. *Id.* at ¶ 1. It also alleges sufficient facts, as described above, to support a reasonable belief that the government can meet its burden of proof at trial. *Id*. at ¶¶ 7-42.

### B. Fed. R. Civ. P. Supp. G(3): Judicial Authorization and Process

Rule G(3) governs judicial authorization and process. It provides that "[i]f the defendant is not real property, the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Fed. R. Civ. P. Supp. G(3)(b)(i). Here, the government seized the Aircraft pursuant to a federal seizure warrant and the clerk issued a valid arrest warrant on October 25, 2018. Thus, arrest was proper.

### C. Fed. R. Civ. P. Supp. G(4): Notice

Rule G(4) requires the government to provide both general notice to the public and direct notice of the forfeiture action to any known person who reasonably appears to be a potential claimant. Fed. R. Civ. P. Supp. G(4)(a), (b).

#### a. Notice by Publication

The public notice requirement may be met by publishing the notice on an official government forfeiture website for at least 30 consecutive days. Fed. R. Civ. P. Supp. G(4)(a)(iv)(C). Rule G(4)(a)(ii) provides that a published "notice must: (A) describe the property

7

with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with a claim and answer." Here, the notice published by the government describes the Aircraft using reasonable particularity (i.e. year, make, model, serial number), the place of seizure (Propjet Aviation LLC, in Santa Rosa, California), and states that claims and answers under Rule G(5) must be brought within 60 days from the first day the notice is published. Proof of Publication of Notice, Attach. 1. The notice also names Gregg W. Lowder as the government attorney to be served with the claim and answer. *Id.* The government published the notice on an official government forfeiture site (www.forfeiture.gov) for 30 consecutive days, from October 26, 2018 to November 24, 2018. Proof of Publication of Notice. Thus, the government has satisfied the requirements of Rule G(4)(a).

### b. Notice to Known Claimants

Rule G(4)(b) sets forth the requirements for notice to known potential claimants. It states that "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Fed. R. Civ. P. Supp. G(4)(b)(i). "The notice must be sent by means reasonably calculated to reach the potential claimant," and "may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related . . . criminal case." Fed. R. Civ. P. Supp. G(4)(b)(iii)(A), (B).

Under Rule 4(f)(1), service of process upon an individual in a foreign country may be accomplished "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). According to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, "[t]he Central Authority of the State [the request is] addressed [to] shall itself serve the document or shall arrange to have it served by an appropriate agency . . . by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed." Hague Convention (XIV) Service Abroad of Judicial and Extrajudicial Documents, art. 5(b). Nov. 15, 1965. Both Australia and the United

States are signatories to this Convention. *Authorities (Per Party)*, HAGUE CONF. ON PRIVATE INT'L LAW, https://www.hcch.net/en/states/authorities (last visited March 19, 2019).

Here, the government complied with Rules 4(f)(1) and G(4)(b) by requesting that the Australian Central Authority serve a notice and copy of the complaint on Gorman, Caluzzi, and Soukoulis, as well as their attorneys in Australia. [Docket No. 25-1 (Lowder Decl., Feb. 11, 2019) ¶ 3.] The Australian Central Authority authorized the request and referred the service to an Australian Federal Police Officer, *id.* at ¶ 4, and Australian Federal Police officers personally served each of the three potential claimants and their Australian criminal attorneys with notice of the action, the complaint, and other relevant documents. [Docket Nos. 12-17.]

Rule G(4)(b) also requires that the notice must state "(A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer." Fed. R. Civ. P. Supp. G(4)(b)(ii).

Here, the notice sent by the government is sufficient. [Docket 11.] The notice indicates that it was sent on November 14, 2018. It provides a 35-day deadline for filing a claim and a 21-day deadline for submitting an answer or a motion under Rule 12. It lists Gregg W. Lowder as the government attorney to be served with the claim and answer. *Id.* Additionally, the notice was personally served on both the potential claimants and their attorneys. The government has thus satisfied the requirements of Rule G(4)(b).

In sum, the government has adhered to the procedural rules governing civil forfeiture actions as required by federal statute, the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Admiralty Local Rules. The court now addresses whether default judgment is warranted.

### IV. DEFAULT JUDGEMENT

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion.

9

*Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986))).

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### A. Subject Matter Jurisdiction and *In Rem* Jurisdiction

The court has subject matter jurisdiction over this action under 28 U.S.C. § 1355(a), which provides district courts with "original jurisdiction . . . [over] any action or proceeding for the recovery or enforcement of any . . . forfeiture . . . incurred under any Act of Congress . . . ." *See also* 28 U.S.C § 1345 (vesting district courts with original jurisdiction "of all civil actions, suits or proceedings commenced by the United States."). Venue in this district is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(b), as the Aircraft was seized and is found in the Northern District of California. *See* 28 U.S.C. § 1355(b)(1)(A) (forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred."); 28 U.S.C. § 1395(b) ("A civil proceeding for the forfeiture of property may be prosecuted in any

10

1 district where such property is found.").

2 This court must also determine whether it has jurisdiction over the Aircraft. *See In re Tuli*, 172 F.3d at 712. *In rem* jurisdiction treats an item of property as a person against whom suits can be filed and judgments can be entered. *United States v. $29,959.00 U.S. Currency*, 931 F.2d 549, 551 (9th Cir. 1991). The Ninth Circuit relies on a plain reading of 28 U.S.C. § 1355(b) as the appropriate jurisdictional test for *in rem* proceedings. *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008). That statute provides that "[a] forfeiture action or proceeding may be brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). Therefore, *in rem* jurisdiction exists if the Aircraft was seized within this district. Since the Aircraft was seized in Santa Rosa, California, which is located within the Northern District of California, the district court has *in rem* jurisdiction over the Aircraft. Compl. at ¶ 4.

### B. Application of the *Eitel* Factors

The first *Eitel* factor examines whether the government will suffer prejudice if the court does not enter a default judgment against the Aircraft. *Eitel*, 782 F.2d at 1471. Courts have found prejudice where the plaintiff will be without a means for recourse if the defendant fails to appear or defend against the suit. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, no party has attempted to oppose the complaint or otherwise make a claim on the Aircraft. Therefore, the first factor weighs in favor of default judgment, as the government has no other opportunity to establish its right to the Aircraft except through default judgment. *See United States v. Approximately $50,000 in U.S. Currency*, No. 4:17-CV-00478-HSG (DMR), 2017 WL 3616443, at *6 (N.D. Cal. Aug. 7, 2017), report and recommendation adopted, No. 17-CV-00478-HSG, 2017 WL 3605224 (N.D. Cal. Aug. 22, 2017) (finding prejudice where no party attempted to claim or defend against the government's *in rem* forfeiture action against a sum of currency, because "the government has no other opportunity [except default judgment] to establish its right to the Currency pursuant to the verified complaint."). Therefore, the first factor weighs in favor of default judgment.

The second and third *Eitel* factors address the merits of a plaintiff's substantive claim and

the sufficiency of the complaint. *Eitel*, 782 F.2d at 1472. In analyzing these factors, the court accepts as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). As noted, the government brings this action under two statutes. The first statute, 21 U.S.C. § 881(a)(4), provides for the forfeiture of conveyances, including aircraft, intended for use in transporting methamphetamine acquired in violation of federal law. *Id*. Here, the government alleges in its verified complaint that Gorman, Caluzzi, and Soukoulis bought the Aircraft in order to transport methamphetamine from the United States into Australia. Compl. ¶¶ 10-13. The facts that Gorman purchased a large quantity of methamphetamine, hid it in a storage unit, and made modifications to prepare the Aircraft for a trans-Pacific journey all support the conclusion that Gorman intended to pilot the plane and transport the methamphetamine he purchased from the United States to Australia. *Id.* at ¶¶ 26-29. Furthermore, during Gorman's interview with the Australian Federal Police, he admitted his intention to use the Aircraft in the manner described and identified Soukoulis and Caluzzi as the planners of the operation. *Id.* at ¶¶ 30-35. These uncontroverted facts indicate that the Aircraft was intended to be used to transport methamphetamine that Gorman possessed with the intent to sell and that Gorman, Caluzzi, and Soukoulis conspired to distribute. Based upon the facts alleged in the complaint, the government has a high likelihood of succeeding on the merits of their claim under 21 U.S.C. § 881(a)(4).

The second statute the government brings this action under is 18 U.S.C. § 981, which provides for the forfeiture of any property involved in a transaction or attempted transaction in violation of the money laundering statute, 18 U.S.C. § 1956. Section 1956 prohibits the transportation of funds to a place within the United States from a place outside of the United States with the intent to promote the carrying on of "specified unlawful activity," including distribution of controlled substances or money laundering. 18 U.S.C. §§ 1956(a)(2)(A), 1956(c)(7)(B)(i), 1961(1). Additionally, Section 1956 prohibits conspiracy to commit any violation of its subsections. 18 U.S.C. § 1956(h). Here, the government alleges Gorman was the sole director of HJ & JM Gorman V Pty Ltd, an Australian company. Compl. ¶¶ 10-13. Gorman opened a bank account in Australia in the name of the company and used the account to purchase

12

the Aircraft from PropJet Aviation, LLC, located in the United States. *Id.* at ¶¶ 16, 20-21. The government also alleges that Caluzzi and Soukoulis assisted by arranging the financing of the aircraft. *Id.* at ¶¶ 11-12. As previously discussed, Gorman, Caluzzi, and Soukoulis intended to use the Aircraft to aid in their conspiracy to transport and distribute methamphetamine. Based upon these properly alleged facts, Gorman, Caluzzi, and Soukoulis transported funds from Australia into the United States in order to purchase the Aircraft and aid in their conspiracy to distribute methamphetamine. Thus, the government has a high likelihood of succeeding on the merits of its claim under 18 U.S.C. § 981. The second and third *Eitel* factors thus weigh in favor of granting default judgment.

As to the fourth *Eitel* factor, default judgment is discouraged "[w]hen the money at stake in the litigation is substantial or unreasonable" in relation to the defaulting party's conduct. *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). Here, the Aircraft's purchase price was $620,000.00. The Aircraft is at the center of the alleged conspiracy, and the purpose of its purchase was to commit drug trafficking by Gorman, Caluzzi, and Soukoulis. No person has come forward to challenge the forfeiture. Therefore, the fourth *Eitel* factor supports granting default judgment.

The fifth *Eitel* factor considers whether it is likely that the material facts of the case will be disputed by the parties. *Eitel*, 782 F.2d at 1471-72. The likelihood of dispute in this case is minimal since the potential claimants received notice of this forfeiture action and failed to make a valid claim or respond to the verified complaint.

The sixth *Eitel* factor considers whether default by the defendant may have been the result of excusable neglect. *Eitel*, 782 F.2d at 1472. In the present case, the potential claimants and their attorneys were personally served with the complaint and related documents, but chose not to respond to this action by filing a claim. The government also served Gorman, Caluzzi, and Soukoulis and their Australian criminal attorneys with copies of the motion for default judgment, and they did not respond. [*See* Docket Nos. 26-32.] There is no indication that the default was due to the potential claimants' excusable neglect.

The seventh *Eitel* factor dictates that the court must take into account the strong policy

favoring a decision on the merits. *Eitel*, 782 F.2d at 1472. This is the only factor that weighs against default judgment in the present case. However, it is not dispositive. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. In this case, no claimant has come forward to contest the forfeiture, making it impossible to obtain a decision on the merits. *See Approximately $50,000 in U.S. Currency*, 2017 WL 3616443, at *7 (finding that the seventh *Eitel* factor did not outweigh the other six factors where there was no claimant in the case, and, as such, it was not possible to obtain a decision on the merits).

In sum, the court concludes that the *Eitel* factors favor default judgment.

## V. CONCLUSION

In light of the foregoing, the court grants the government's motion for default judgment against Defendant One 1980 Cessna Aircraft, Model P210, FAA #N212SB, and enters judgment for the United States of America. The Aircraft shall be forfeited to the United States of America, and all right, title, and interest in the Aircraft shall be vested in the United States of America. Immediately upon receipt of this order, the government shall serve a copy of this order on all known interested parties at their last known address or through their attorneys, if known, and shall file a proof of service.

**IT IS SO ORDERED.**

Dated: March 27, 2019



Donna M. Ryu
United States Magistrate Judge